# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

KUNNEMAN PROPERTIES LLC, on behalf of itself and all others similarly situated,

   Plaintiff,

v.

MARATHON OIL COMPANY (including affiliated predecessors and affiliated successors),

   Defendant.

Case No. 17-CV-456-JED-FHM

## OPINION AND ORDER

  Before this Court is Defendant's Motion to Dismiss or Transfer and Brief in Support. This document was docketed as two separate motions: a motion to dismiss (Doc. 21) and a motion to transfer (Doc. 22). A better way to understand Defendant's filing—based on the content and organization of the document itself—is as a motion to dismiss for failure to state a claim and a motion to dismiss <u>or</u> transfer due to improper venue. This is how Plaintiff understood the split between the two docketed items, and Plaintiff filed its responses accordingly. Plaintiff's first Response (Doc. 29), filed on October 9, addressed Defendant's Rule 12(b)(6) arguments. The Court then granted Plaintiff an extension of time to respond to the "motion to transfer." (Doc. 31). In that later Response (Doc. 35), Plaintiff addressed Defendant's venue-based arguments for transfer and/or dismissal. Defendant now contends that Plaintiff filed an untimely response to its motion to dismiss for improper venue by not including it in the earlier Response. (Doc. 36 at 2-3). The Court will not penalize Plaintiff for addressing the dismissal aspect of Defendant's venue arguments along with its discussion of transfer—especially when Defendant organized its initial

brief in that manner. (*See* Doc. 21 at 2 of 34). In fact, the Court will follow suit and address the venue-based arguments together in this Order, leaving the Rule 12(b)(6) arguments for a later date.

**I.      Background**

In its Complaint, Plaintiff Kunneman Properties LLC ("Kunneman") brings several claims against Defendant Marathon Oil Company ("Marathon"), all concerning royalty payments on oil and gas wells in the State of Oklahoma. (Doc. 2). Plaintiff purports to bring its claims as a representative party on behalf of others similarly situated, though this Court has not yet considered Plaintiff's request for class certification pursuant to Fed. R. Civ. P. 23(c). (*See id*. at 34).

Plaintiff asserts that this Court has subject matter jurisdiction over these claims based on 28 U.S.C. § 1332(d), which, in relevant part, grants federal district courts original jurisdiction in "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Plaintiff contends in its Complaint that the amount in controversy in this case exceeds the jurisdictional amount and that "members of the classes and Marathon are citizens of different states." (Doc. 2 at ¶ 2).

Plaintiff further contends that venue is proper in this District "because Marathon transacts business and is found within this District, and/or has agents within this District, and a substantial part of the events giving rise to the claims asserted herein occurred in this District." (*Id*. at ¶ 3). Defendant disputes this characterization, arguing that "neither Marathon nor the claims have a sufficient connection to the Northern District to authorize venue under [28 U.S.C. §] 1391(b)." (Doc. 21 at 11 of 34).

II.  Discussion

   A.  Challenge to Venue under 28 U.S.C. § 1391

Under 28 U.S.C. § 1391(b), a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Subpart (3) is not relevant here, as Plaintiff concedes that this action could have been brought in the Western District of Oklahoma. (*See* Doc. 35 at 12). The current dispute revolves, instead, around § 1391(b)(1) and (2). The Court finds it unnecessary to consider whether venue is proper under § 1391(b)(1) because it finds that venue is proper under § 1391(b)(2). *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013) ("When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper . . . ."); *see also ConocoPhillips Co. v. Jump Oil Co.*, 948 F. Supp. 2d 1272, 1282 (N.D. Okla. 2013) (treating § 1391(b)(1) and § 1391(b)(2) as alternative, rather than hierarchical, venue provisions).

The Tenth Circuit has set forth a two-part test for reviewing challenges to venue under § 1391(b)(2). *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). The court first "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id*. Then, the court "determine[s] whether substantial 'events material to those claims occurred' in the forum district." *Id*. (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). In doing so, the court looks "not to a single triggering event prompting the action,

but to the entire sequence of events underlying the claim." *Id*. (quoting *Uffner v. LaReunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)). A showing of "'acts and omissions that have a close nexus' to the alleged claims" will meet the substantiality requirement. *Id*. (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003)). Notably, under § 1391(b)(2), "venue is not limited to the district with the *most* substantial events or omissions." *Id*. at 1165.

Plaintiff presents two sets of claims in its Complaint. The first set includes breach of lease; breach of fiduciary duty; fraud, deceit, and constructive fraud; and tortious breach of lease. (Doc. 2 at ¶¶ 61-89). The underlying acts that serve as a basis for these claims are Defendant's alleged underpayment or nonpayment of royalties (*id*. at ¶¶ 54-60) and Defendant's alleged misrepresentations or omissions found on the monthly check stubs sent to royalty owners (*id*. at ¶¶ 74-83). In its second set of claims, Plaintiff asserts fraud and breach of a statutory obligation to pay interest, in addition to seeking equitable and injunctive relief. (*Id*. at ¶¶ 119-148). Defendant's alleged refusal to pay interest on untimely royalty payments serves as the underlying act to this latter set of claims. (*Id*. at ¶¶ 90, 95, 113-118).

The Court turns next to whether substantial events material to these claims occurred in the Northern District of Oklahoma. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166. It is undisputed that Defendant has contracted with IBM in Tulsa to provide services related to royalty payments. (*See* Doc. 21 at 14 of 34; Doc. 35 at 3). According to affidavits provided by Defendant, IBM personnel "record[] volumes, prices, and costs into Marathon's accounting system." (Doc. 21-1 at ¶ 7; Doc. 21-3 at ¶ 3). The accounting system then "calculates the payments made to owners of interests in the Oklahoma wells." (Doc. 21-1 at ¶ 7; Doc. 21-3 at ¶ 4). IBM then issues and mails the royalty checks to the well owners. (*Id*.). Plaintiff has provided evidence that Marathon's website directs

4

all royalty payment inquiries to "Marathon Oil Corporation – Royalty Relations," listed at a Tulsa address. (Doc. 35 at 6).

Defendant's affiants characterize the tasks completed by IBM as "administrative," (Doc. 21-1 at ¶ 7; Doc. 21-3 at ¶ 3), whereas the Marathon employees with supervisory responsibility for accounting matters related to production from Oklahoma wells work at Marathon's headquarters in Houston, Texas. (Doc. 21-1 at ¶ 7). Marathon itself does not have an office in the Northern District of Oklahoma, and none of the wells owned by Plaintiff and operated by Marathon are located in this District. (*Id*. at ¶¶ 3, 7). In fact, Marathon has not operated any oil or gas wells in this District in the relevant timeframe. (*Id*. at ¶ 5).

Nonetheless, the Court finds that substantial events relevant to Plaintiff's claims occurred here in the Northern District. As noted above, the underlying acts alleged in this case are the underpayment or nonpayment of royalties, misrepresentations or omissions on royalty check stubs, and the refusal to pay interest on untimely payments. In looking at "the entire sequence of events underlying the claim[s]," *see Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166, it is clear that Tulsa plays a significant role. Any underpayment or nonpayment of royalties and interest occurred as a direct result of calculations completed in Tulsa by IBM on behalf of Marathon. The information on the check stubs was generated in Tulsa, as well, given that IBM personnel issued and mailed the checks. Even if executive decisions regarding royalty payments were made at Marathon's Houston headquarters, the actual payments and check stubs at issue were drawn up in Tulsa. (Doc. 21-1 at ¶ 7; Doc. 21-3 at ¶ 4).

Defendant cites three district court cases to support the notion that "the administrative acts of IBM's personnel do not 'give rise' to Kunneman's claims." (Doc. 21 at 15 of 34). In the first case, *Bro-Tech Corp. v. Purity Water Co. of San Antonio, Inc.*, the district court dismissed the

plaintiff's argument that venue was proper in the Eastern District of Pennsylvania because the plaintiff's headquarters was located in that District. No. 08-371, 2008 WL 1757922, at *3 (E.D. Penn. Apr. 16, 2008). The court concluded that "[t]he executive and administrative functions of the plaintiff's headquarters in the Eastern District of Pennsylvania [were] not a substantial part of the events or omissions giving rise to the plaintiff's claim." *Id*. Instead, "[a]lmost every act or omission giving rise to the [breach of contract] claim took place outside of the Eastern District of Pennsylvania: the origination of orders; the placement of orders; the destination of the product; the manufacture of the product; and the alleged failure of the product to perform (and therefore a breach of the contract)." *Id.* The court's reasoning in *Bro-Tech* was based on the facts of that specific case and does not support a more general proposition that administrative acts cannot give rise to legal claims.

Marathon also cites *Uniroyal, Inc. v. Sperberg*, 63 F.R.D. 55 (S.D.N.Y. 1973). In *Uniroyal*, the plaintiff sought a declaratory judgment as to the validity of the defendant's patent. 63 F.R.D. at 57. The court held that the plaintiff's claim arose when a conference between the parties' counsel was held in the Southern District of New York—not when the defendant later filed a patent infringement case in Ohio. *Id*. at 59. The court explained:

> A right to a declaratory judgment of the validity of a patent arises when a potential infringer is threatened with litigation and cannot compel the patentee to proceed. By the time of the New York meeting, the operative facts in this case had reached such a stage that there was a real question as to the validity of [the defendant's] patent, and [the plaintiff] could have come into court seeking a declaratory judgment at any time after the New York meeting. The act of filing a complaint in Ohio was a ministerial act, an act which in itself did not create the uncertainty over the patent's validity but was merely a manifestation of that uncertainty. For this reason, I find that the claim arose in this district and, therefore, venue is clearly proper under 28 U.S.C. § 1391(b).

*Id*. at 59-60 (internal citations omitted).

Given the nature of the claim in *Uniroyal*, the plaintiff could have brought its case before—or even without—the defendant filing a separate patent infringement suit. In contrast, it is difficult to see how Plaintiff in this case could have brought its claims alleging improper payment practices before the IBM personnel in Tulsa calculated and sent out the payments themselves.

Lastly, in *Everest Indemnity Insurance Co. v. Ro*, a federal district court transferred an insurance case to the District of Washington, finding venue to be improper in the District of Minnesota. 200 F. Supp. 3d 825, 836 (D. Minn. 2016). In that case, the defendant-employee sought coverage under his employer's insurance policy in connection to a lawsuit that a client had filed against him in Washington state court. *Id.* at 828. The insurance company then brought the lawsuit in question, in which it sought a judicial declaration that no coverage was available to the employee under the policy. *Id.* The insurance company filed its case in Minnesota, but the court found that venue was improper there:

> Although the Policy was issued in Minnesota to a Minnesota-headquartered insured, that event was merely "a necessary event, in a causal sense," in the chain of causation leading up to this insurance dispute, but is not "an event giving rise to [this dispute] because it was not itself wrongful" . . . .

*Id.* at 836 (internal citations omitted). The underlying lawsuit was being litigated in Washington, and the employee had made his claims under the policy from his Washington residence. *Id.* The employee had also "reiterated his position through counsel in letters sent from Washington." *Id.* The court therefore concluded that the employee's acts in Washington were "the substantial events giving rise to [the insurance company's] declaratory judgment action." *Id.*

Again, this case is inapplicable to the situation at hand. Unlike the court in *Everest*, this Court cannot say that the acts occurring in Tulsa (i.e., the calculation and issuance of payments) were not wrongful when improper payment practices are precisely what Plaintiff is alleging in its Complaint. (*See, e.g.,* Doc. 2 at ¶¶ 58, 60, 97).

This Court therefore finds that venue lies here in the Northern District of Oklahoma.

B.     **Alternative Request to Transfer under 28 U.S.C. § 1404(a)**

Defendant alternatively requests that the Court transfer this case to the Western District of Oklahoma pursuant to 28 U.S.C. § 1404(a). (Doc. 21 at 17 of 34). Under § 1404(a), a court may, "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." This section gives the district court discretion to consider convenience and fairness in an "individualized, case-by-case" manner. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), *quoted in Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). Ultimately, the moving party "bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp.*, 928 F.2d at 1515.

The Tenth Circuit has instructed district courts to consider several factors in evaluating motions for transfer under § 1404(a): (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and, (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. *Id*. The Court notes at the outset that factors (4) through (8) do not apply in this case. *See Mojave Oil & Gas, L.L.C. v. EnerVest Operating, L.L.C.*, No. 16-CV-582-JHP-FHM, 2017 WL 2876469, at *3 (N.D. Okla. July 6, 2017) ("The fourth, fifth, sixth, seventh, and eighth factors are all neutral and do not support transfer, as there is no relevant difference

between the Northern and Western Districts [of Oklahoma] with respect to these factors.").

Defendant contends that the first factor, Plaintiff's choice of forum, is entitled to no weight in this case. According to Defendant, this is Plaintiff's counsel's third attempt to bring a class action against Defendant alleging royalty underpayments. (*See* Doc. 21 at 8 of 34). Indeed, Plaintiff's counsel filed *Grellner v. Marathon Oil Co.*, No. 16-CV-1168-M, in the Western District of Oklahoma on October 7, 2016, with nearly identical allegations as those contained in the Class I section of the Complaint in this case. (*See* Doc. 1 in *Grellner*, 5:16-CV-1168-M). The case was assigned to Judge Vicki Miles-LaGrange. Shortly after Marathon moved to dismiss in *Grellner*, the plaintiffs filed a Notice of Voluntary Dismissal. (*See* Doc. 10, 13 in *Grellner*, 16-CV-1168-M). In February 2017, the same counsel filed another very similar case in the Western District on behalf of a different client, Barbara Bollenbach. (*See* Doc. 1 in *Bollenbach v. Marathon Oil Co.*, 5:17-CV-122-M). Again, the case was assigned to Judge Miles-LaGrange, and, again, the plaintiff in *Bollenbach* voluntarily dismissed the case. (*See* Doc. 6 in *Bollenbach v. Marathon Oil Co.*, 5:17-CV-122-M). A few months later, on behalf of yet another plaintiff, the same counsel filed a similar Complaint (Doc. 2) in this case. Though this Complaint adds a second set of allegations concerning untimely royalty payments (*see* Doc. 2 at ¶¶ 90-148), the Complaint is otherwise nearly identical to the complaints filed in *Grellner* and *Bollenbach*.

Also in regard to the first *Chrysler Credit* factor, Defendant asserts that Plaintiff's choice of forum should be accorded "little weight" because "the facts giving rise to the lawsuit have no material relation or significance to the plaintiff's chosen forum." (Doc. 21 at 19 of 34) (quoting *Mojave Oil & Gas, L.L.C.*, 2017 WL 2876469, at *2). Defendant further contends that Plaintiff's choice of forum should receive less deference because Plaintiff does not reside in this district. (*Id.* at 19-20 of 34).

9

The Court finds that it need not address each of these issues because Defendant has failed to carry its burden to establish that this forum is inconvenient—even assuming Plaintiff's choice of forum is accorded no weight.  Defendant relies on the second and third factors, arguing that they weigh in favor of transfer to the Western District.  (Doc. 21 at 20 of 34).  Defendant states that "[t]here is no basis for any contention that the IBM personnel are important witnesses in this lawsuit," whereas "Marathon's decision-makers are located in its Houston and Oklahoma City offices."  (*Id.*).  Plaintiff, however, points to an earlier royalty-related case against Marathon, *Hill v. Marathon Oil Co.*, which suggests Marathon may very well utilize IBM employees in Tulsa as witnesses here.  (*See* Doc. 35 at 14).  Plaintiff has submitted segments of the transcript from the *Hill* court's hearing on a motion for classification, and these segments demonstrate that Marathon brought forward three IBM employees as witnesses to help explain Marathon's accounting process.  (*See* Doc. 35-2 at 2 of 7).  At any rate, the Court notes that the Western and Northern Districts are adjacent to each other, thus minimizing any concern over travel times.

According to Defendant, other types of proof will be more accessible and less costly in the Western District, as well.  (Doc. 21 at 20 of 34).  Yet the record contains no evidence concerning the relative costs of litigating the case in the Western District versus the Northern District.  *See Emp'rs Mut. Cas. Co.*, 618 F.3d 1153 at 1169 (finding that the third factor did not support transfer when the record contained no evidence of the potential costs of litigating the case in the other court).

Finding no factor that weighs in favor of transfer, the Court hereby denies Defendant's request for transfer under § 1404(a).  Because the Court finds that venue lies here in the Northern District, Defendant's Motion to Transfer (Doc. 22) is **denied.**

ORDERED this 9th day of January, 2018.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE