IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KUNNEMAN PROPERTIES, LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARATHON OIL COMPANY, including affiliated predecessors and affiliated successors,<br><br>Defendant. | Case No. 17-CV-00456-GKF-JFJ |

## OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss [Doc. 21] of defendant Marathon Oil Company. For the reasons set forth below, the motion is granted in part and denied in part.

**I.  Background**

This is a dispute regarding the alleged underpayment, late payment, or non-payment of royalties and oil and gas production proceeds from gas-producing wells operated by defendant Marathon Oil Company. Plaintiff Kunneman Properties, LLC owns royalty interests in Marathon-operated wells and purports to bring this action on behalf of itself and others similarly situated, although class certification issues pursuant to FED. R. CIV. P. 23(c) are not yet at issue. Plaintiff's Original Class Action Complaint ("Complaint"), the operative pleading in this matter, includes allegations with respect to two separate classes: (1) Class I, defined to include all persons who own or owned minerals in Oklahoma subject to an oil and gas lease from September 1, 2011 to present wherein Marathon improperly reduced royalty payments by charging the owners for the cost of marketing, gathering, compressing, dehydrating, treating, processing, or transporting

hydrocarbons produced, and (2) Class II, defined to include all persons or entities who received untimely payments from defendant or its designee for oil and gas proceeds from Oklahoma wells, and whose payments did not include interest required by statute.

With respect to Class I, the Complaint includes the following claims: (1) breach of lease, (2) breach of fiduciary duty; (3) fraud; (4) deceit; (5) constructive fraud; and (6) tortious breach of lease. Class II claims are: (1) breach of statutory obligation to pay interest; (2) fraud; (3) accounting and disgorgement; and (4) injunctive relief. Defendant seeks dismissal of all claims pursuant to FED. R. CIV. P. 12(b)(6). *See* [Doc. 21].[1]

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Twombly,* 550 U.S. at 555). The court accepts as true all factual allegations, but the tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

---

[1] Defendant's motion to dismiss was submitted as a single document with a motion to transfer. The motion to dismiss and motion to transfer were docketed as two separate documents. *See* [Doc. 21 and Doc. 22]. U.S. District Judge John E. Dowdell denied defendant's motion to transfer prior to reassignment of this case. *See* [Doc. 37].

"Dismissal is appropriate if the law simply affords no relief." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.,* 680 F.3d 1194, 1202 (10th Cir. 2011). A putative class action complaint is properly dismissed if the named plaintiff's claims fail to state a plausible claim for relief. *See Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1213 (10th Cir. 2006).

**III.  Analysis**

As previously stated, plaintiff seeks certification of two separate classes and asserts claims specific to each class. The court first considers the claims related to the improper reduction of royalties brought on behalf of Class I.

*A.  Class I Claims*

Plaintiff purports to assert the following claims on behalf of Class I: breach of lease; breach of fiduciary duty; fraud; deceit; constructive fraud; and tortious breach of lease. The court separately considers each claim.

1.  <u>Breach of Lease</u>

Defendant alleges that plaintiff fails to state a plausible claim for breach of lease because plaintiff does not identify, describe, reference, or attach the applicable oil and gas lease(s). Citing two decisions by the U.S. District Court for the Western District of Oklahoma, defendant contends that Oklahoma courts have "repeatedly required" named plaintiffs in royalty underpayment cases to specifically allege the pertinent lease provision(s) to satisfy Rule 12(b)(6) or, alternatively, to attach a copy the lease(s) to the pleading. *See* [Doc. 21, pp. 22-23 (citing *Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249 (W.D. Okla. 2012); *Chieftain Royalty Co. v. Dominion Okla. Tex. Expl. & Prod., Inc.*, No. CIV-11-344-R, 2011 WL 9527717 (W.D. Okla. July 14, 2011))].

In *Dominion Oklahoma*, the court dismissed a claim for "breach of lease" because plaintiff "failed to identify, describe, reference in any way or attach to their pleading as exhibit(s) any oil and gas lease(s) that they claim the Defendants have breached, and have failed to include sufficient allegations concerning the terms of the alleged lease(s)." *Dominion Okla. Tex. Expl. & Prod., Inc.*, 2011 WL 9527717, at *2. The court concluded Rule 12(b)(6) requires a plaintiff in a royalty case to "identify or describe their individual leases in which Defendant . . . is the lessee . . . or attach copies thereof" and, further, to "describe the royalty terms thereof *so as to raise the existence of leases between the individual Plaintiffs and Defendant . . . and alleged breach by Defendant of the implied duty to market and thus Plaintiffs' right to relief beyond the speculative level*." *Id.* (emphasis added) (citing *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009)); *see also Hitch Enters., Inc.*, 859 F. Supp. 2d at 1257 (emphasis added) ("[T]he Court finds based upon *Chieftain Royalty* that the allegations in the first amended complaint with regard to the *identity of the leases* that the defendants allegedly breached do not satisfy the pleadings requirements of *Twombly* and *Iqbal*.").

*Dominion Oklahoma* and *Hitch* are distinguishable. Unlike in those cases, plaintiff identifies the applicable leases: oil and gas leases dated January 26, 1973 (recorded at Book 469, Pages 143-144 in the Kingfisher County, Oklahoma records), and June 19, 2014 (recorded at Book 2721, Pages 220-222 in the Kingfisher County, Oklahoma records). [Doc. 2, ¶ 4]. Thus, plaintiff's allegations raise the existence of leases between plaintiff and defendant beyond the speculative level. Further, the Complaint includes allegations that the leases "include implied covenants requiring [defendant] to prepare the gas and its constituent parts for market at [defendant's] sole cost" and that "[t]he leases also place upon [defendant] the obligation to properly account for and pay royalty interests to royalty owners under the mutual benefit rule and good faith and fair

dealing." [*Id.* ¶ 62]. In cases subsequent to *Dominion Oklahoma* and *Hitch*, other Oklahoma federal courts have concluded that similar allegations sufficiently identified the royalty terms of the leases to satisfy Rule 12(b)(6). *See Harris v. Chevron U.S.A., Inc.*, No. CIV-15-94-C, 2015 WL 3746989, at *2 (W.D. Okla. June 15, 2015); *Cecil v. BP Am. Prod. Co.,* No. CIV-16-410-RAW, 2017 WL 2987174, at *3 (E.D. Okla. Mar. 20, 2017). These more recent, factually analogous cases are persuasive, and the court concludes that plaintiff has sufficiently alleged the relevant lease language. Finally, the Complaint includes allegations from which the court may infer that defendant breached its royalty obligations under the leases, including specific averments regarding royalty payments for residue gas, natural gas liquids (NGLs), drip condensate, and helium, liquid nitrogen, and other products.[2] [Doc. 2, ¶ 54]. Thus, the Complaint includes sufficient factual allegations to plausibly state the existence and breach of the lease agreements.[3]

Defendant next argues that plaintiff's breach of lease claim must be dismissed because plaintiff fails to include any facts as to the "marketable condition" of the gas on which it received payments.[4] However, defendant provides the court no authority requiring facts as to the

---

[2] Defendant's contention in its reply that this paragraph alleges conduct common amongst "most producers" is without merit. Paragraph 54 specifically includes allegations that *Marathon* underpaid its royalty holders as to residue gas, NGLs, drip condensate, and other products, and that plaintiff's wells produce drip condensate and helium. [Doc. 2, ¶ 54].

[3] The court further notes that plaintiff attached the leases to its response in opposition to the motion to dismiss.

[4] It is well-established under Oklahoma law that "[a] producer has a duty to market gas from a producing well." *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203, 1206 (Okla. 1998). "[W]hen *unmarketable* gas undergoes GCDTP [gathering, compression, dehydration, treatment, and processing] services for the purpose of transforming that unmarketable gas into a marketable product, the lessee must bear the cost of the GCDTP services." *Naylor Farms, Inc. v. Chaparral Energy*, *LLC*, 923 F.3d 779, 786 (10th Cir. 2019) (emphasis in original) (citing *Mittelstaedt*, 954 P.2d at 1210). Conversely, "when *marketable* gas undergoes GCDTP services to enhance the value of gas that is already marketable, the lessee may, under certain circumstances, allocate the cost of the GCDTP services to royalty holders." *Id.* (emphasis in original).

marketability of the gas in order to survive a motion to dismiss. Rather, defendant relies on principles of law articulated in the context of motions for class certification, a proceeding with entirely separate substantive and procedural considerations. *See, e.g., Chieftain Royalty Co. v. XTO Energy, Inc.,* 528 F. App'x 938, 943 (10th Cir. 2013). Defendant's motion to dismiss with respect to this issue may be denied for this reason alone. Finally, the Complaint includes allegations from which the court may reasonably infer that the gas at issue requires gathering, compression, dehydration, treatment, and processing ("GCDTP") to be made marketable. *See* [Doc. 2, ¶ 19 ("The members of Class I own royalty interests in wells that produce gas and constituents that *are transformed* into marketable products and sold into the established commercial markets for those products.") (emphasis added)]. To the extent that the relevant gas did not require GCDTP services to made marketable, the Complaint alleges that Marathon underpays those "for whom defendant is legally entitled to deduct post-production Midstream Service Costs, by taking excessive deductions under Midstream Services Contracts that allow excessive monopoly charges for GCDTP services." [*Id.* ¶ 55]. Accordingly, the Complaint includes allegations with respect to marketability.[5] Thus, defendant's motion to dismiss the breach of lease claim is denied.[6]

---

[5] Further, it appears the marketable condition of the gas at issue is a question of fact, inappropriate for resolution at the motion to dismiss stage. *See Naylor Farms, Inc.*, 923 F.3d at 793 n.12.

[6] In its reply in support of the motion to dismiss, defendant contends that the 2014 lease expressly allows for the deduction of GCDTP costs and the 1973 lease does not establish a valuation standard for royalties tied to market prices or rates for gas at the well. [Doc. 34, pp. 4-5]. However, in the motion to dismiss, defendant did not challenge the substance of plaintiff's claim—that is, argue that the royalty deductions were permissible under the leases—but, instead, argued only that the Complaint failed to allege sufficient facts with respect to the relevant leases and breach thereof. [Doc. 21]. Because defendant raises this argument for the first time in its reply, the court does not consider it. *See Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir. 2010) (citing *Hill v. Kemp*, 478 F.3d 1236, 1250-51 (10th Cir. 2007)). Additionally, the court notes that, although at some point the court will have to consider the terms of the leases to determine the

2. <u>Breach of Fiduciary Duty</u>

Defendant argues that plaintiff's breach of fiduciary duty claim should be dismissed because plaintiff fails to allege facts that plausibly demonstrate that defendant underpaid royalties and therefore breached its fiduciary duty to plaintiff. In opposition, plaintiff points to the allegations of paragraphs sixty-six through seventy and contends that those paragraphs sufficiently assert the existence of a fiduciary duty based on unitization orders by the Oklahoma Corporation Commission ("OCC") pursuant to 52 OKLA. STAT. ANN. §§ 287.1-287.15 and/or 52 OKLA. STAT. ANN. § 87.1. However, plaintiff's characterization of its allegations is overbroad. Paragraphs sixty-six through seventy allege that *Class I* members have interests in Oklahoma wells that have been united under 52 OKLA. STAT. §§ 287.1-287.15 and/or 52 OKLA. STAT. § 87.1, giving rise to a fiduciary duty. The Complaint includes no allegations that *plaintiff* owns a royalty interest subject to a unitization order of the OCC. *See Harris*, 2015 WL 3746989, at *3; *cf. Morrison ex rel. Haar Family Trust v. Anadarko Petroleum Corp.*, No. CIV-10-135-M, 2010 WL 2721397, at *2 (W.D. Okla. July 6, 2010); *Hitch Enters., Inc.*, 859 F. Supp. 2d at 1262-63. It is well-established under Oklahoma law that the mere existence of an oil and gas lease does not give rise to a fiduciary duty. 52 OKLA. STAT. § 902(2); *Krug v. Helmerich & Payne, Inc.*, 320 P.3d 1012, 1018 (Okla. 2013) ("A royalty lease alone does not create a fiduciary duty."). An exception exists for royalty owners and lessees that are parties to a unitization order. *Krug*, 320 P.3d at 1018 ("A unit operator in a unitized section owes a fiduciary duty to the royalty owners and lessees who are parties to the unitization agreement or order creating the unit. The duty is not created by the lease agreement but rather by the unitization order and agreement."). Plaintiff does not allege that it owns property

---

respective rights of the parties, at this motion to dismiss phase, the Complaint includes sufficient factual allegations to state a plausible claim for breach of the lease agreements. *See Harris,* 2015 WL 3746989, at *2.

subject to a unitization order or agreement and therefore fails to state a plausible claim for breach of fiduciary duty on its own behalf. Thus, dismissal of the breach of fiduciary duty claim is appropriate. *See Hitch Enters., Inc.*, 859 F. Supp. 2d at 1257 n.4 ("At this stage of the litigation, each named plaintiff must plead its own cause of action. . . . Thus, each plaintiff must meet its own procedural burden under Rule 12(b)(6) and the pleading standards of *Twombly* and *Iqbal*.").[7]

### 3. Fraud, Deceit, and Constructive Fraud

Plaintiff asserts claims for fraud, deceit, and constructive fraud. Although numbered as separate "counts" the supportive allegations for each claim are presented together and therefore the court collectively considers the fraud, deceit, and constructive fraud claims. *See* [Doc. 2, ¶¶ 73-85]; *see also Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1045 (Okla. 2013) ("This Court has often said that fraud is a generic term embracing the multifarious means which human ingenuity can devise so one can get advantage over another by false suggestion or suppression of the truth.").

Under Oklahoma law, an actionable claim for fraud or deceit requires plaintiff to establish the following elements: "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment." *Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009). Constructive fraud, on the other hand, is "the concealment of material facts which one is bound under the circumstances to disclose." *Bankers Tr. Co. v. Brown*, 107 P.3d 609, 613 (Okla. Civ. App. 2004) (quoting *Varn v. Maloney*, 516 P.2d 1328, 1332 (Okla. 1973)). Unlike actual fraud or deceit, constructive fraud

---

[7] Because the court concludes the Complaint fails to state a plausible claim for breach of fiduciary duty, the court does not consider whether § 902 applies retroactively.

does not require intent to deceive. *Faulkenberry v. Kansas City. S. Ry. Co.*, 602 P.2d 203, 206 n.8 (Okla. 1979).

Defendant argues that plaintiff's claims fail to satisfy the heightened pleading standard of FED. R. CIV. P. 9(b).[8] Pursuant to Rule 9, "[a] party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)), *abrogated on other grounds, Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019). "Rule 9(b)'s purpose is 'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)).

Here, plaintiff has alleged fraud with the required specificity. Plaintiff alleges defendant (who) made material misrepresentations as to the volume, price, monetary fee, and in-kind volumetric deductions (what) in monthly check stubs from September 1, 2011 to present (when and where). [Doc. 2, ¶¶ 9 and 54].[9] The Complaint also includes allegations as to why the

---

[8] Defendant also argues that the claims must be dismissed because plaintiff fails to allege facts plausibly showing that defendant underpaid royalties to plaintiff. [Doc. 21, pp. 26-27]. However, as discussed above, the Complaint includes sufficient allegations to plausibly assert that defendant underpaid royalties to plaintiff. *See* [Doc. 2, ¶ 54]. Thus, the court declines to dismiss the fraud, deceit, or constructive fraud claims on this basis.

[9] The Complaint includes no specific allegations that *plaintiff* received the monthly check stubs. However, the Complaint includes allegations from which the court may reasonably infer that plaintiff receive the allegedly fraudulent monthly stubs. *See* [Doc 2, ¶ 4 ("Plaintiff owns royalty

statements were false. [*Id.* ¶¶ 54 and 55]. Although the specific dates of the monthly check stubs are not alleged, "specific dates are not necessary to provide notice of the nature of the fraudulent scheme." *Jeter v. Wild West Gas, LLC*, No. 12-CV-411-TCK-PJC, 2015 WL 5970992, at *6 (N.D. Okla. Oct. 14, 2015). Thus, the asserted false and misleading statements are alleged with the requisite particularly pursuant to Rule 9(b). Defendant's assertions that plaintiff must allege the particular check stub, particular statement on a stub, the specific incorrect volume or price, and the undisclosed deduction or fee "ask too much of Plaintiff[']s pleading." *Low v. OMNI Life Sci., Inc.*, No. CIV-18-305-SLP, 2019 WL 3242726, at *6 (W.D. Okla. July 17, 2019).

Defendant next contends that plaintiff does not plausibly allege detrimental reliance on the alleged misrepresentations and omissions in the check stubs and therefore fails to state a claim. Both actual (deceit) and constructive fraud "require detrimental reliance by the person complaining." *Howell v. Texaco Inc.*, 112 P.3d 1154, 1161 (Okla. 2004). To survive a motion to dismiss, the Tenth Circuit requires a pleading alleging fraud to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch*, 203 F.3d at 1236 (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).

Plaintiff alleges that it and Class I members "did rely on and/or are legally presumed to have relied upon these uniform written representations as being truthful and accurate, when they were not. Plaintiff and the Class I Members suffered injury and were underpaid as a result." [Doc. 2, ¶ 75]. Additionally, in opposition to the motion to dismiss, plaintiff points to the following allegations to bolster the detrimental reliance element: "[a]ll payment formulas, all affiliate and

---

interests in Marathon operated wells that produce gas.") and ¶ 53 ("Marathon represents the royalty calculation on the form of a monthly check stub it sends *each* royalty owner.") (emphasis added)].

non-affiliate contractual relationships, and all calculations are firmly kept in the exclusive control of lessees, and they involve undisclosed accounting and operational practices" [*Id.* ¶ 52; *see also id.* ¶¶ 25-26, 53-56] and that "Marathon knew the facts were peculiarly within Marathon's knowledge and that the Class I members were not in a position to discover the facts pertaining to the proper volume, values, and constituents coming from their wells." [*Id.* ¶ 79].

However, in a well-reasoned opinion, U.S. District Judge Lee West rejected similar allegations as conclusory and lacking factual specificity. *See Hitch Enters, Inc.*, 859 F. Supp. 2d at 1260-61. In that case, Judge West recognized that, "[u]nder the Supreme Court's plausibility standard, the plaintiffs were required to plead sufficient facts to create a reasonable inference of reliance." *Id.* at 1261 (citing *Iqbal,* 556 U.S. at 677). With respect to the allegations at issue, Judge West concluded:

> The plaintiffs' allegation of reliance is conclusory and lacking factual specificity. Allegations are not entitled to be assumed to be true when they merely restate the essential elements of a claim rather than provide specific facts to support those elements. The plaintiffs' "obligation to provide the 'grounds' of [their] . . . entitle[ment] to relief,' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Id.* (quoting *Twombly*, 550 U.S. at 555).

The court agrees with Judge West's reasoning in *Hitch*, and concludes that plaintiff's fraud claims are subject to dismissal for similar reasons. The Complaint in this matter asserts that plaintiff and putative class members "did rely on and/or are legally presumed to have relied on" defendant's alleged representations. However, this allegation of reliance is conclusory and not entitled to the presumption of truth. *See Iqbal,* 556 U.S. at 681. The Complaint includes no factual allegations to substantiate plaintiff's bald assertion of reliance; moreover, it includes no allegations of *detrimental* reliance. Thus, the court concludes that "the plaintiff[']s claims of fraud, deceit and constructive fraud—each of which requires the essential element of reliance—are not 'well-

pleaded' with regard to the element of reliance" and the Complaint does not plausibly state a claim for fraud, deceit, or constructive fraud. *Hitch Enters., Inc.*, 859 F. Supp. 2d at 1261 (internal citation omitted); *see also McKnight v. Marathon Oil Co.*, No. CIV-17-00264-R, 2017 WL 1628981, at *1 (W.D. Okla. May 1, 2017); *Dominion Okla. Tex. Expl. & Prod., Inc.*, 2011 WL 9527717, at *4. Moreover, plaintiff's fraud claims fail because plaintiff fails to allege that it changed its position as a result of the alleged misrepresentations. *See Olson v. Briscoe*, 10 P.3d 246, 249 (Okla. Civ. App. 2000). Because plaintiff fails to allege reliance to its detriment with sufficient specificity, the Complaint does not state a cognizable claim for fraud, deceit, or constructive fraud. Defendant's motion to dismiss these claims is granted.[10]

    4.    <u>Tortious Breach of Lease</u>

Defendant moves to dismiss the final claim asserted on behalf of Class I—tortious breach of lease—arguing the relationship created by an oil and gas lease does not constitute the requisite "special relationship" to support a claim for tortious breach of contract under Oklahoma law. In response, plaintiff contends the Oklahoma Supreme Court has recognized a tortious breach of contract claim in the context of an oil and gas lease, citing *Hall Jones Oil Corp. v. Claro*, 459 P.2d 858, 861 (Okla. 1969) and *Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.*, 700 P.2d 1023 (Okla. Civ. App. 1985).

Plaintiff's interpretation of *Hall Jones* and *Woods* has been rejected by courts in the Western and Eastern Districts of Oklahoma, which uniformly decline to recognize a claim for tortious breach of an oil and gas lease. *See Chieftain Royalty Co. v. BP Am. Prod. Co.*, No. 16-CV-444-JHP, 2017 WL 5012586, at *4 (E.D. Okla. Nov. 2, 2017); *Reirdon v. Cimarex Energy*

---

[10] Because plaintiff fails to plausibly allege all of the required elements of fraud, deceit, and constructive fraud, the court does not consider whether plaintiff may simultaneously assert the breach of lease and fraud claim.

*Co.*, No. CIV-16-445-SPS, 2017 WL 4295188, at **2-3 (E.D. Okla. Sept. 27, 2017; *Harris*, 2015 WL 3746989, at *3; *Hitch Enters., Inc.*, 859 F. Supp. 2d at 1263-64; *Morrison*, 2010 WL 2721397, at **3-4.

Moreover, in a more recent decision than those cited by plaintiff, the Oklahoma Supreme Court held liability for tortious breach of contract requires a "special relationship," marked by "(1) disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract, and (2) the elimination of risk." *Embry v. Innovative Aftermarket Sys. L.P.*, 247 P.3d 1158, 1160 (Okla. 2010) (citing *Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1226 (Okla. 1988)). The court further expressed its "reluctance" to extend recover for tortious breach of contract "beyond the insurance field." *Embry,* 247 P.3d at 1160.

Plaintiff does not allege the requisite "special relationship" to support a tortious breach of contract claim under Oklahoma law. In fact, the Complaint's allegations belie a "special relationship," because plaintiff alleges "[t]he usual revenue split from a well was 1/8th to the lessor (royalty owner) and 7/8ths to the lessee," but, "due to the prevalence of wells delineating the field, better seismic technology, and increased efficiency of drilling rigs, royalty owners on more recent leases have received 3/16th or even1/4th of the revenue." [Doc. 2, ¶ 24]. Further, apart from the failure of the specific allegations in this case, the court joins those courts in the Eastern and Western Districts of Oklahoma questioning whether the Oklahoma Supreme Court would ever impose tort liability under the circumstances and declining to extend a claim for tortious breach of contract to oil and gas leases, absent a clear directive from the Oklahoma Supreme Court to the contrary. *See, e.g., Reirdon*, 2017 WL 4295188, at **2-3 (collecting cases). Plaintiff's tortious breach of lease claim is dismissed.

B.  *Class II Claims*

Plaintiff purports to assert the following claims on behalf of Class II: breach of statutory obligation to pay interest, fraud, accounting and disgorgement, and injunctive relief. The court first turns to the breach of statutory obligation to pay interest claim.

1. <u>Breach of Statutory Obligation to Pay Interest</u>

Defendant asserts that plaintiff does not state a plausible claim for breach of the statutory obligation to pay interest because the Complaint includes no allegations as to specific payments that were untimely or insufficient. In response, plaintiff contends that defendant "exaggerates Plaintiff's pleading burden in this case." [Doc. 29, p. 19]. The court agrees with plaintiff.

The Tenth Circuit has recognized that, in the wake of *Iqbal* and *Twombly*, "Rule 8(a)(2) still lives" and "[t]here is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to state a claim for relief. FED. R. CIV. P. 8(a)(2). Thus, the Supreme Court has declined to require specific facts, in favor of statements that "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Khalik*, 671 F.3d at 1192 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

The Oklahoma Production Revenue Standards Act ("PRSA") requires, subject to some exceptions, that

> where proceeds from the sale of oil or gas production or some portion of such proceeds are not paid prior to the end of the applicable time periods provided in this section, that portion not timely paid shall earn interest at the rate of twelve percent (12%) per annum to be compounded annually, calculated from the end of the month in which such production is sold until the day paid.

52 OKLA. STAT. § 570.10(D)(1). Plaintiff alleges that it is an owner of Oklahoma oil and gas wells in which Marathon has incurred an obligation to pay oil and gas proceeds; the PRSA requires compensation for untimely payments including interest thereon; and defendant failed to pay interest on untimely payments made to plaintiff. [Doc. 2, ¶¶ 91, 94, 95, 108, 110-113]. Other federal courts in Oklahoma have found similar allegations sufficient where, as here, the rate of interest is statutorily prescribed and it does not appear defendant lacks "fair notice" of the grounds upon which the claim rests. *See Reirdon*, 2016 WL 4991552, at *3; *Marathon Oil Co.*, 2018 WL 2745906, at *2. The court concurs with those courts and concludes that the Complaint states a plausible claim for breach of the statutory obligation to pay interest. Defendant's motion to dismiss with respect to this claim is denied.

2. <u>Fraud</u>

Plaintiff also purports to assert a fraud claim based upon defendant's failure to disclose its obligations to pay statutory interest to plaintiff and other Class II members. Defendant seeks dismissal of this claim, arguing the claim fails to satisfy the pleading requirements of Rule 9 and Rule 12(b)(6). The court agrees with defendant and the fraud claim as to the Class II members is dismissed.

As set forth above, to state an actionable claim for fraud, at a minimum, the pleading must "set forth the time, place and contents of the false representation, the identity of the party making the false statements *and the consequences thereof*." *Koch,* 203 F.3d at 1236. With respect to the Class II fraud claim, plaintiff alleges that it "relied on and trusted" defendant to pay the full amount of oil and gas proceeds owed, including interest, based on defendant's superior access to the information, but that defendant failed to do so and plaintiff was damaged as a result. [Doc. 2, ¶¶ 112-117 and 133-134]. These allegations are conclusory and lack factual specificity. Plaintiff

also fails to allege how it relied on the representations to its detriment—that is, any action taken to its detriment based on defendant's alleged fraudulent assertions. *See Hitch Enters., Inc.*, 859 F. Supp. 2d at 1261. Thus, the court cannot reasonably infer detrimental reliance and plaintiff fails to state a plausible claim for fraud. *See Marathon Oil Co.*, 2018 WL 2745906, at *3; *Reirdon*, 2017 WL 4295188, at *3 ("Although there may be some information not in the hands of the Plaintiff at this stage of the litigation, that is not the case with facts establishing a reasonable inference of reliance.").

### 3. Claims for Equitable Remedies of Accounting, Disgorgement, and Injunctive Relief

Defendant urges the court to dismiss plaintiff's claims for equitable relief because the relief sought is precluded by the existence of statutory damages. Defendant relies on the Oklahoma Supreme Court's decision in *Krug v. Helmerich & Payne, Inc.*, 320 P.3d 1012 (Okla. 2013). However, *Krug* was not decided in the context of a motion to dismiss, but rather on appeal of a judgment entered following a jury trial. *Krug*, 320 P.3d at 1016. As the motion to dismiss stage, Oklahoma federal courts consistently decline to dismiss alternative theories and requests for relief. *See Hitch Enters., Inc.,* 859 F. Supp. 2d at 1258-59; *BP Am. Prod. Co.*, 2017 WL 5012586, at *6 ("To the extent Plaintiff seeks equitable relief, the Court concludes Plaintiff's separate identification of this request as a claim for relief does not warrant dismissal at this stage. The form that relief takes, after the merits of other claims are determined, will be ascertained later in this case."); *Reirdon*, 2016 WL 4991552, at *3. In fact, considering similar claims, a court in the Eastern District of Oklahoma concluded as follows:

> The Court notes that these claims for equitable relief necessarily flow out of the base claims of breach of contract and fraud, but finds that separately identifying these requests for relief does not merit dismissal at this stage of the proceedings as it is premature to determine whether one or all of the bases for equitable relief has merit.

*Marathon Oil Co.*, 2018 WL 2745906, at *4.  The court agrees with reasoning of the Eastern District and defendant's motion to dismiss plaintiff's claims for equitable relief (accounting, disgorgement, and injunctive relief) is denied.

C.   *Unnamed Defendants*

Finally, defendant moves to dismiss plaintiff's claims against unnamed defendants, including defendant's "affiliated predecessors and affiliated successors."  Specifically, plaintiff asserts as follows:

> Marathon and its affiliated predecessors, successors, and current and past employees, agents, representatives, attorneys, or others acting on their behalf and all those to whose prior leasehold interests they have succeeded and for whom they are legally liable whether by merger, assignment, or otherwise shall herein collectively be known as "Defendant" or "Marathon."

[Doc. 2, ¶ 7].  Thus, plaintiff alleges that defendant may be liable by virtue of the conduct of unnamed persons or entities.  However, "conclusory allegations that [defendant] may be liable because of the acts and/or omissions of an unidentified entity are insufficient under *Twombly* and *Iqbal*."  *Hitch Enters., Inc. v. Cimarex Energy Co.*, No. CIV-11-13-W, 2011 WL 13113326, at *3 (W.D. Okla. Mar. 15, 2011).  The Complaint includes no additional allegations from which the court may reasonably infer that another person or entity may be liable to plaintiff for the conduct alleged.  Accordingly, defendant's motion to dismiss plaintiff's claims against unnamed defendants is granted.  *See Cecil*, 2017 WL 2987174, at *4.

In its response to the motion to dismiss, plaintiff argues that amendment with respect to this issue should be permitted. However, plaintiff's request for leave to amend does not comply with the requirements of Local Civil Rule 7.2(*l*) and is therefore denied.[11]

IV. **Conclusion**

WHEREFORE, Defendant Marathon Oil Company's Motion to Dismiss [Doc. 21] is granted in part and denied in part. With respect to the Class I claims, the motion is granted as to plaintiff's claims for fraud, breach of fiduciary duty, and tortious breach of lease. With respect to the Class II claims, the motion is granted with respect to plaintiff's fraud claim. The motion is also granted as to plaintiff's claims against any unnamed defendants, including defendant's "affiliated predecessors and affiliated successors." The motion is otherwise denied. It is further ordered that any reference to defendant's "affiliated predecessors and affiliated successors" shall be stricken from the caption of this matter.

IT IS SO ORDERED this 24th day of September, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

[11] The court also notes that, prior to reassignment of this case to this court, the deadline for motions for joinder of additional parties and/or amendment to the complaint lapsed without plaintiff seeking leave to amend to add other named defendants. *See* [Doc. 42].