IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| KUNNEMAN PROPERTIES LLC, | ) |  |
|---|---|---|
| On behalf of itself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-456-GKF-JFJ |
| | ) | |
| MARATHON OIL COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's First Motion to Compel (ECF No. 50), which is **GRANTED IN PART** and **DENIED IN PART** as set forth below.

I. **Factual and Procedural Background**[1]

This case involves the alleged underpayment, late payment, or non-payment of royalties and oil and gas production proceeds from gas-producing wells operated by Defendant Marathon Oil Company ("Marathon"). Plaintiff Kunneman Properties, LLC owns royalty interests in Marathon-operated wells and purports to bring this action on behalf of itself and others similarly situated in two separate classes. Plaintiff claims Marathon "underpaid royalty by deducting the costs necessary to make gas marketable when Marathon bears the sole burden of shouldering those costs under Oklahoma law." ECF No. 50 at 4 (citing Compl. ¶¶ 61-89). Proposed Class I consists of all persons who own or owned minerals in Oklahoma subject to an oil and gas lease from September 1, 2011, to present wherein Marathon improperly reduced royalty payments by

---

[1] This Order assumes familiarity with Plaintiff's Class Action Complaint (ECF No. 2) and Judge Frizzell's Opinion and Order dated September 24, 2019 (ECF No. 83).

charging the owners for the cost of marketing, gathering, compressing, dehydrating, treating, processing, or transporting hydrocarbons produced. Proposed Class II consists of all persons or entities who received untimely payments from defendant or its designee for oil and gas proceeds from Oklahoma wells, and whose payments did not include interest required by statute.

Early in the case, when the parties filed their Joint Status Report, Plaintiff argued that "discovery should not be stayed, limited, or bifurcated." ECF No. 39. Conversely, Marathon argued that "discovery should be bifurcated, with discovery prior to the class certification hearing being limited to class certification issues and those merits issues directly related to class certification." *Id.* On February 6, 2019, United States District Judge John Dowdell issued a scheduling order setting a discovery deadline of January 6, 2020, without making any reference to bifurcation. ECF No. 42. Although the Scheduling Order did not set a trial date or other pretrial motion dates requested by Plaintiff, it otherwise tracks Plaintiff's proposed schedule. *Compare* ECF No. 39 *with* ECF No. 42. Accordingly, Judge Dowdell rejected Marathon's proposal to bifurcate discovery into phases and set one discovery deadline governing the case.

On February 22, 2019, Plaintiff issued the discovery requests currently at issue. On May 24, 2019, upon joint motion of the parties, Judge Dowdell extended all deadlines but did not revisit the issue of bifurcation. That amended scheduling order, which currently governs the litigation, sets a class-certification hearing for April 29, 2020, and sets a discovery deadline of July 20, 2020. ECF No. 49. Shortly after Plaintiff filed the pending motion to compel, Marathon caused new counsel to enter an appearance, and the case was reassigned to United States District Judge Gregory Frizzell. Upon his entry to the case, Judge Frizzell did not issue a new scheduling order or otherwise revisit scheduling issues. On September 24, 2019, Judge Frizzell ruled on Marathon's pending motion to dismiss. Pursuant to this ruling, the remaining Class I claim is breach of lease, and the remaining Class II claims are (1) breach of statutory obligation to pay interest; (2)

accounting and disgorgement; and (3) injunctive relief. *See* ECF No. 83. No class has yet been certified.[2]

## II.    Standard of Review

Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Discoverable information need not be admissible at trial. *Id.* Rule 26 provides six factors to consider regarding proportionality: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). This analysis often means "that the burden of responding to discovery lies heavier on the party who has more information, and properly so." Fed. R. Civ. P. 26(b) advisory committee's note (2015 amendment). Rule 26's proportionality requirement is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." Fed. R. Civ. P. 26(b) advisory committee's note (2015 amendment).

Document requests must describe what is being sought with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). Objections to discovery requests must be stated "with specificity." Fed. R. Civ. P. 34(b)(2)(B). Mere boilerplate objection language, such as "vague, over-broad,

---

[2] In a class action alleging underpayment of royalties, the Tenth Circuit recently rejected defenses to class certification premised on gas-quality variations, varying lease language, and a lack of uniform payment methodology. *See Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 795-98 (10th Cir. 2019). Plaintiff contends that that decision confirms that "cases like this are viable, valuable, and should be certified" but that it still must have discovery to prove certification is proper. ECF No. 50 at 1.

3

unduly burdensome, not reasonably calculated to lead to discovery of admissible evidence," without more, is not sufficient. *See Howard v. Segway, Inc.*, No. 11-CV-688-GKF-PJC, 2013 WL 869955, at *1, *3 (N.D. Okla. Mar. 7, 2013). "When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1189 (10th Cir. 2009). District courts managing discovery matters are subject to review only for abuse of discretion. *See Caves v. Beechcraft Corp.*, No. 15-CV-125-CVE-PJC, 2016 WL 355491, at *1 (N.D. Okla. Jan. 29, 2016).

**III.    Parties' Arguments**

In their brief and during the hearing, Marathon raised three principal objections to Plaintiff's discovery requests: (1) the requests are not relevant to class-certification issues; (2) the requests will require extensive searches of Marathon's electronically stored information ("ESI"), which is overly burdensome prior to class certification; and (3) all challenged individual requests are facially overbroad or vague. Defendant contends that, based on the thousands of documents it has already produced related to oil and gas royalty calculations, "both parties will have everything they need to fully analyze and argue class certification" and that the disputed requests are merely designed to "create settlement leverage." ECF No. 70 at 2.

In its response and during the hearing, Plaintiff argued: (1) relevance is not limited to class certification issues and, regardless, the disputed requests are relevant to class certification; (2) Marathon's global objection to producing any ESI is without merit; and (3) the challenged individual requests are not overbroad or vague, in light of Plaintiff's offer to limit ESI searches to specific search terms and custodians. Plaintiff contends Marathon is attempting to "curate document production to match [its] sham defenses against class certification" and that it "object[s] on relevancy and proportionality grounds for the types of documents – i.e., internal

4

communications – that most clearly contain common answers for class certification." ECF No. 50 at 7.

IV.     **Analysis**

The Court holds: (1) discovery is not limited to class-certification issues; (2) Marathon must search and produce ESI, subject to agreed ESI protocols; and (3) certain requests are vague or overbroad and will be limited by the Court.

   A.     **Discovery Is Not Limited to Class Certification Issues**

As explained above, the district judge has not bifurcated discovery into stages, and there is one discovery deadline governing the litigation. Marathon has not moved for modification of the scheduling order or for bifurcation, and the Court will not revisit the issue of bifurcation under the guise of sustaining Marathon's discovery objections. Nor will the Court jeopardize the current scheduling order by postponing the production of ESI until after a ruling on class certification. Further, the Court finds the vast majority of requests are relevant to class certification, rather than merely merits issues, such that bifurcation would not significantly limit the discovery being compelled. Marathon's objections based on the requested discovery's lack of relevance to class-certification issues are overruled. Marathon's objections premised on the discovery's lack of proportionality to this "stage" of the proceedings are also overruled, as discovery is not staged or bifurcated.

   B.     **ESI Must Be Searched With Established ESI Protocols**

Across multiple requests for production, Plaintiff is requesting that Marathon search, review, and produce ESI. Specifically, Plaintiff is requesting searches of email accounts, shared folders, and desktop folders. Plaintiff stands willing (and has been willing) to negotiate search terms, custodians, and other ESI protocols for these requests. In support of its global argument

that ESI searches are overly burdensome, Marathon relies on the affidavit of James Cashion, eDiscovery Support Analyst at Marathon. Cashion explained that, prior to March 26, 2018, emails not otherwise governed by a litigation hold order were retained for 45 days. *Id.* at ¶ 14. Cashion further represented that no backup data has been retained for emails prior to February 9, 2018. *Id.* at ¶ 15. Cashion estimates it would take 240-288 machine hours to "publish" the requested documents, and eight to twelve weeks for two paralegals to review the documents. *See* ECF No. 70-2 at ¶¶ 25, 29.

The Court overrules Marathon's blanket objection to search and production of ESI. Although Marathon contends Plaintiff has all discovery it needs for purposes of class certification, Marathon's internal documents and communications, and communications with midstream providers, could tend to show commonality of claims and Marathon's understanding and application of the implied duty to market in Oklahoma on a class-wide basis. Further, search of electronic databases for relevant internal communications or documents is not merely a fishing expedition. It is not overly speculative that Marathon employees discussed the bases and reasoning behind the royalty calculation data already produced. Communications, board minutes, and presentations may be important to establishing class-wide treatment of royalty calculations for Oklahoma wells. ESI may be particularly relevant here, because Plaintiff contends Marathon continued improperly calculating Oklahoma royalties even after settling a prior lawsuit presenting similar allegations regarding improper royalty calculation. *See* ECF No. 50 at 4 n.8 (citing final approval of $40 million settlement in *Hill v. Marathon Oil Company*, No. CIV-08-37-R (W.D. Okla.)).

Cashion's burden analysis is not particularly meaningful, because it does not account for any specified search terms, specific number of custodians, or other ESI protocols. Although

Cashion states that Plaintiff "has not proposed any specific ESI protocol or search terms," *see id.* at ¶ 9, Plaintiff contends it was willing to do so but Marathon stood on its blanket objection. Further, under the retention policy explained by Cashion, it appears that ESI searches will be for a significantly more limited duration than the entire requested Class Period.[3] Cashion's affidavit does not persuade the Court that production of ESI is globally overly burdensome or disproportionate to the needs of this case. Considering all proportionality factors, the Court finds the requested ESI is important to the issues at stake; that there is a significant amount in controversy; that Marathon has access and resources to search ESI; and that the overall burden or expense of searching ESI does not outweigh its likely benefit. Fed. R. Civ. P. 26(b)(1).

However, as discussed below, certain requests are overly burdensome without limitations in the form of ESI protocols, and Plaintiff agrees that protocols are necessary and appropriate. The Court will not *sua sponte* establish ESI search protocols, and the Court orders the parties to meet and confer on the subject of establishing ESI protocols. Subject to establishment of these protocols by agreement, and other limits established for specific requests below, the Court overrules Marathon's global objection to search and review of ESI at this stage of the proceeding.[4]

---

[3] In the discovery requests, "Class Period" is defined as (September 1, 2011, through the date class notice is given).

[4] Plaintiff cited at least three Orders compelling similar discovery requests (including ESI) in cases where Plaintiff's counsel represents a class of royalty owners against different oil and gas companies. *See, e.g.*, ECF No. 50-1 (Order granting motion to compel against Devon Energy Company in case pending in Pittsburg County). These Orders did not set forth reasoning and were of limited persuasive value. However, they dispel the general notion that ESI is not routinely ordered in these proceedings.

### C. Specific Requests are Granted, Denied, or Narrowed as Follows

#### 1. Organizational Charts and Employee Lists (RFP No. 1(b))

*Moot.* At the hearing, Marathon agreed to provide a custodian list for employees with information about the Marathon Oklahoma Leases and Marathon Wells during the Class Period. Plaintiff was satisfied with this response at the hearing.[5]

#### 2. Gas Contracts and Return-on-Investment Documents for Midstream Gathering Systems (RFP Nos. 4(a)(iv)-(v))

*Granted.* In these requests, Plaintiff seeks documents relating to Marathon Wells connected to Marathon-owned or -operated midstream assets. Specifically, Plaintiff requested, for each midstream gathering system owned or operated by Marathon, that Marathon produce its Gas Contracts for the system (4(a)(iv)), and documents showing the internal return on investment that Marathon included in the price structure for the system (4(a)(v)). These requests are relevant to what fees and proceeds midstream service providers absorb or pass on to Marathon, which then may be passed on to royalty owners. Although Marathon has already produced pricing formulas to show the value of the gas sold, the deductions charged, and the exemptions passed on to the royalty owners, the requested contracts with third-party producers show the source of the pricing formulas. Notably, Marathon did not argue these requests were overly burdensome or disproportionate to the needs of the case, only that the documents sought were not relevant.

---

[5] The Court's capitalized phrases refer to defined terms in Plaintiff's discovery requests.

### 3. Documents Relating to Royalty Accounting and Payment (RFP No. 10)

#### a. How Royalty Was Calculated; Approvals of Proposed Changes to Methodology; and Decisions to Deduct Midstream Service Costs (RFP Nos. 10(b)(i)-(iii))

*Granted, subject to limitations and ESI protocols.* These requests are relevant to showing Marathon's class-wide decisions or changes regarding royalty calculations during the Class Period. To ensure proportionality, Plaintiff must limit this request to a proportional and reasonable number of search terms and custodians. Further, as discussed at the hearing, RFP Nos. 10(b)(i) and 10(b)(ii) are limited to documents pertaining to Marathon Wells, as defined in Plaintiff's Requests for Production. RFP Nos. 10(b)(ii) and 10(b)(iii) are limited to the Class Period, as defined in Plaintiff's Requests for Production. The parties shall meet and confer to establish ESI protocols and to identify relevant search terms and relevant custodians.

#### b. Methodology Used for Marathon Wells Acquired from Other Companies (RFP No. 10(b)(iv))

*Granted, subject to limitations and ESI protocols.* This request is relevant to showing whether, upon acquisition, Marathon changed course in royalty payment methods and how Marathon set up a payment methodology for the acquired well. To ensure proportionality, Plaintiff must limit this request to a proportional and reasonable number of search terms and custodians. This request shall also be limited to the Class Period. The parties shall meet and confer to establish ESI protocols and to identify relevant search terms and relevant custodians.

#### c. Royalty Payment Methodology in Other States (RFP No. 10(b)(vi))

*Granted, subject to limitations and ESI protocols.* This request is relevant to whether Marathon uses the same payment methodology in Oklahoma as it does in states with differing laws regarding the implied duty to market. However, the Court finds the request to be facially

9

overbroad, because it extends to all documents that could potentially relate to how Marathon calculates royalties in every state across the entire country without limitation. Accordingly, RFP No. 10(b)(vi) is limited to charts and summary documents that compare royalty payment methodologies used in Oklahoma with methodologies used in other states. If necessary, the parties shall meet and confer to establish ESI protocols and to identify relevant search terms and relevant custodians.

        d.      **"Source" Documents for Check Stub Numbers and Calculations (RFP No. 10(c)(i))**

*Denied, as vague and facially overbroad.* Plaintiff requests documents showing the "source" of the numbers appearing "on the check stub and whether any value, volume, or Btu has been reduced or netted-out" before Marathon reports that number "on the check stub sent to royalty owners." It would be disproportionately burdensome for Marathon to comply with this request as written, given that (1) it seeks production of extensive information for each and every royalty owner for every Marathon Well for every month during the Class Period; (2) the meaning of "source" documents is unclear; and (3) Plaintiff did not offer to limit this request in any reasonable way during the hearing. Further, Marathon represents that it has already produced pay history and contracts to enable the parties, counsel, and experts to evaluate how cost exemptions were set up for individual owners regarding the Marathon Wells during the relevant time period.

        e.      **Contracts and Written Instructions Provided to or by Accounting Entities (RFP No. 10(c)(ii))**

*Granted, subject to limitations and ESI protocols.* How Marathon instructed accounting entities to calculate royalty payments is relevant to class certification and liability, and for purposes of comparing such instructions with the data and calculations Marathon produced. To ensure proportionality, Plaintiff must limit this request to a proportional and reasonable number of search

terms and custodians. This request shall also be limited to the Class Period. The parties shall meet and confer to establish ESI protocols and to identify relevant search terms and relevant custodians.

    **4.    Documents Relating to Other Class Action Settlements (RFP No. 14)**

*Granted, subject to limitations and ESI protocols.* Plaintiff requests any documents "concerning class action settlements greater than $5 million by other Oklahoma producers, including, but not limited to," seven identified settlements enumerated in RFP No. 14. During the hearing, Plaintiff limited the request to the seven enumerated settlements. The request is relevant to whether and for what reasons Marathon made any changes to royalty payment methodologies after other Oklahoma producers paid large settlements to settle royalty underpayment claims. It is not overly speculative that large settlements sparked internal discussions about how royalties were being calculated in Oklahoma. Nor is it overly speculative to conclude that many of these communications are non-privileged. To ensure proportionality, Plaintiff must limit this request to a proportional and reasonable number of search terms and custodians. The parties shall meet and confer to establish ESI protocols and to identify relevant search terms and relevant custodians.

    **5.    Analyses, Presentations, and Financial Projections Regarding Marathon's Oklahoma Oil and Gas Production Assets and Midstream Service Costs (RFP. No. 16)**

*Granted, subject to limitations and ESI protocols.* The requests are relevant, because analyses, presentations, and financial projections may show what fees and proceeds are being passed on to royalty owners at which stages of marketability. The request is limited to the specifically listed items, and the phrase "documents showing" is stricken from the request. To ensure proportionality, Plaintiff must limit this request to a proportional and reasonable number of search terms and custodians. The parties shall meet and confer to establish ESI protocols and to identify relevant search terms and relevant custodians.

### 6. Communications with Midstream Services Providers (RFP No. 22)

RFP 22 requests "documents relating to [Marathon's] communications with providers of Midstream Services" regarding six topics. The Court finds all six subparts relevant to issues presented but finds that some requests are facially overbroad and therefore imposes limits to ensure proportionality to the needs of the case. On a global basis, the Court limits RFP 22 to Marathon's communications with providers of Midstream Services, rather than all "documents relating to" such communications.

#### a. Implied Duty to Market and Marketable Products (RFP No. 22(a))

*Granted, subject to limitations and ESI protocols.* This request is facially overbroad and burdensome to the extent it seeks all documents and communications in any way related to these two broad concepts. The Court finds the phrase "marketable products" to be particularly overbroad, and the Court limits this request to communications with providers of Midstream Services regarding the specific concept of the "implied duty to market" under Oklahoma law. The Court also limits the request to the Class Period. To further ensure proportionality, Plaintiff must limit this request to a proportional and reasonable number of search terms and custodians. The parties shall meet and confer to establish ESI protocols and to identify relevant search terms and relevant custodians.

#### b. Other Communications (RFP Nos. 22(b)-(f))

*Granted, subject to limitations and ESI protocols.* In the remaining requests, Plaintiff seeks communications with service providers regarding: where "title to the gas will transfer under the gas contract(s) being negotiated" (22(b)); providing testimony in this royalty underpayment case or other prior class actions where Marathon was a defendant but the service provider was not (22(c)); this case (22(d)); any prior case involving any Marathon Wells (22(e)); and changing to

or from a fee-based agreement to a POP or POI agreement (22(f)). The Court finds all requests to be relevant to class certification and liability. To ensure proportionality, Plaintiff must limit these requests to a proportional and reasonable number of search terms and custodians. The parties shall meet and confer to establish ESI protocols and to identify relevant search terms and relevant custodians.

> 7. **Documents Already Produced in *Hal McKnight et al. v. Marathon Oil Company*, Case No. 5-17-CV-264-HE (W.D. Okla.) (the "*McKnight* Case") (RFP No. 26)**

*Moot.* Plaintiff requests "all documents produced" in the *McKnight* Case, which Plaintiff represents was a recently litigated and settled individual case with claims against Marathon that were analogous to the class claims in this case. At the hearing, Marathon represented that Plaintiff has all responsive documents from that case.

> 8. **Request to Compel Production of Documents Marathon Promised to Produce**

*Denied.* Plaintiff asks the Court to compel Marathon to produce documents in response to RFPs 2(j)-(k), 4(a)(i), 5(d), 5(e), and 10(a). Marathon agreed to produce documents in response to these RFPs, but Plaintiff contends production has not been forthcoming. Marathon is still in the process of searching for and producing documents to Plaintiff, and there is no indication that Marathon is being dilatory in responding to these discovery requests. Accordingly, Plaintiff's request for an order compelling production of these documents is denied at this time.

**V. Conclusion**

Plaintiff's First Motion to Compel (ECF No. 50) is **GRANTED IN PART** and **DENIED IN PART** as set forth above. Plaintiff shall propose ESI protocol for relevant requests no later than ten days from the date of this Order, and the parties shall meet and confer regarding disputes and make all efforts to reach agreement.

**SO ORDERED** this 15th day of October, 2019.

*[signature: Jodi F. Jayne]*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**