## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

KUNNEMAN PROPERTIES LLC, )
DJM FAMILY, LLC, )
ROYSE FAMILY, L.L.C., and )
JAMES CANON, )
on behalf of themselves and all )
others similarly situated, )
 )
   Plaintiffs, )
 )
v. ) Case No. 17-CV-00456-GKF-JFJ
 )
MARATHON OIL COMPANY, )
 )
   Defendant. )

## OPINION AND ORDER

This matter comes before the court on the Objection to Magistrate Judge's Order [Doc. 126] of defendant Marathon Oil Company.  For the reasons set forth below, the Objection is overruled and Marathon's request that this court overturn the Magistrate Judge's ruling on the Second Motion to Compel as to the "*Mittelstaedt* Reviews" is denied.

### I. Background/Procedural History

This is a dispute regarding the alleged underpayment or non-payment of royalties and oil-and-gas production proceeds from gas-producing wells operated by defendant Marathon Oil Company.  Plaintiffs own royalty interests in Marathon-operated wells and purport to bring this action on behalf of themselves and others similarly situated.  Plaintiffs' First Amended Class Action Complaint (Amended Complaint), the operative pleading in this matter, includes allegations with respect to a single class, defined to include all persons who own or owned minerals in Oklahoma subject to an oil and gas lease from September 1, 2011 to present wherein Marathon improperly reduced royalty payments by charging the owners for the cost of marketing, gathering,

compressing, dehydrating, treating, processing, or transporting hydrocarbons produced.  Plaintiffs assert a single claim for breach of lease.

On November 10, 2020, plaintiffs filed a Second Motion to Compel seeking three categories of documents and information:  (1) complete class pay detail, including pay detail from PayRock Energy Holdings, LLC; (2) Marathon's "*Mittelstaedt* Reviews"; and (3) Marathon's categorization of the oil-and-gas leases by royalty clause.  [Doc. 110].  Pursuant to 28 U.S.C. § 636, this court referred plaintiffs' motion to U.S. Magistrate Judge Jodi F. Jayne, who held a telephonic hearing on Wednesday, December 9, 2020.  [Doc. 122].  During the hearing, Magistrate Judge Jayne issued an order from the bench granting the motion as to the PayRock pay detail and "*Mittelstaedt* Reviews," but denying the motion as to the categorization of the oil-and-gas leases by royalty clause.  *See generally* [Doc. 123].  Pursuant to Fed. R. Civ. P. 72(a), Marathon now seeks review of Magistrate Judge Jayne's Order, but only as to the portion of the ruling relating to its "*Mittelstaedt* Review" documents.

## II.    Standard

Subject to certain exceptions, "[a] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court[.]"  28 U.S.C. § 636(b)(1)(A).  A party may seek review by the district judge of a magistrate's judge order by filing an objection within fourteen (14) days of being served with a copy of the decision.  Fed. R. Civ. P. 72(a).  "Rulings by Magistrate Judges that fall within this general grant of authority are reviewed under a 'clearly erroneous or contrary to law' standard."  *Jama v. City & Cnty. of Denver*, 304 F.R.D. 289, 294 (D. Colo. 2014); *see also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").  "The clearly erroneous standard applies to factual findings . . .  and requires that the district

court affirm unless it is left with the 'definite and firm conviction that a mistake has been committed.'" *Williams v. Sprint/United Mgmt. Co*., 238 F.R.D. 633, 637-38 (D. Kan. 2006), *subsequent determination,* 464 F. Supp. 2d 1100, *reconsideration denied*, 2007 WL 315826 (internal citation omitted) (quoting *Ocelot Oil Corp. v. Sparrow Indus*., 847 F.2d 1458, 1464 (10th Cir. 1988)). "By contrast, the 'contrary to law' standard permits 'plenary review as to matters of law.'" *Id.* (quoting Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069, at 355 (2d ed. 1997)). Thus, the court must "review the factual findings underlying the [Magistrate Judge's] attorney-client privilege ruling for clear error and purely legal questions de novo." *In re Grand Jury Subpoenas*, 144 F.3d 653, 658 (10th Cir. 1998).

### III.    Analysis

Marathon objects to the portion of the Magistrate Judge's ruling related to the "*Mittelstaedt* Review" documents because it contends those documents are subject to attorney-client privilege. In her December 9 bench ruling, Magistrate Judge Jayne concluded that Marathon had failed to meet its burden of showing the "*Mittelstaedt* Review" documents were protected by the attorney-client privilege for two reasons:  (1) the "*Mittelstaedt* Reviews" do not qualify for the privilege because it was not shown that the documents were for the purpose of securing legal advice, and (2) the reviews are factual documents that Marathon contractually agreed to produce to royalty owners in Paragraph 2.8(B)(ii) of the Settlement Agreement executed in another class action, *Hill v. Marathon Oil Company*, No-CIV-08-37-R (W.D. Okla. Sept. 1, 2011).   Marathon raises objections to both conclusions, which the court separately considers.

A.        *Attorney-Client Privilege*

Pursuant to Federal Rule of Evidence 501, "state law applies the rule of decision on privilege in diversity cases." *Frontier Refin., Inc. v. Gorman-Rupp Co*., 136 F.3d 695, 699 (10th Cir. 1998).  Thus, the court looks to Oklahoma law.

The Oklahoma Supreme Court has recognized "the fundamental premise that the attorney-client privilege is designed to shield the client's confidential disclosures and the attorney's advice." *Chandler v. Denton*, 741 P.2d 855, 865 (Okla. 1987).  However, "the mere status of an attorney-client relationship does not make every communication between attorney and client protected by the privilege." *Scott v. Peterson*, 126 P.3d 1232, 1234 (Okla. 2005); *see also Chandler*, 741 P.2d at 866 n.32 ("The mere relation of attorney and client does not raise a presumption of confidentiality.").  Rather, the privilege extends only to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Okla. Stat. tit. 12, § 2502(B).  The party asserting the privilege bears the burden of establishing the privileged status of the communication.  *Chandler*, 741 P.2d at 865; *Motley v. Marathon Oil Co*., 71 F.3d 1547, 1550 (10th Cir. 1995) ("The party seeking to assert a privilege has the burden of establishing its applicability.").  Thus, to prevail on its privilege claim, Marathon must show "(1) a confidential communication; (2) between privileged persons; [and] (3) made to assist in securing legal advice or assistance for the client." *Curtis v. Progressive N. Ins. Co*., No. CIV-17-1076-PRW, 2019 WL 1937596, at *2 (W.D. Okla. May 1, 2019); *see also Davis v. PMA Cos.*, No. CIV-11-359-C, 2012 WL 3922967, at *1 (W.D. Okla. Sept. 7, 2012).

Marathon first argues that the Magistrate Judge "erred as a matter of law in relying on a legal presumption that communications to or from in-house counsel are not privileged." [Doc. 126, p. 5].  It is true that Oklahoma federal courts have declined to apply a presumption based on

the status of an attorney as in-house or outside counsel. *See Lindley v. Life Invs. Ins. Co. of Am.*, 267 F.R.D. 382, 391 (N.D. Okla. 2010); *Davis,* 2012 WL 3922967, at \*3 ("Oklahoma has not adopted a 'heightened scrutiny' analysis or applied a rebuttable presumption that an in-house attorney's input 'is more likely business than legal in nature.'"). Instead, the court must make a "fact-driven" determination as to whether the "primary or predominant purpose of the communication" is a legal or business purpose. *Lindley*, 267 F.R.D. at 391; *Davis,* 2012 WL 3922967, at \*3 ("[T]he Court does not presume that an in-house attorney's involvement was primarily for business purposes, but instead looks at each communication to determine whether it was made for the purpose of seeking or providing legal advice."). The status of counsel (in house or outside) is a relevant factor for the court to consider. *Lindley,* 267 F.R.D. at 391. "[O]nly communications made primarily for the purpose of seeking or dispensing legal advice are protected by the attorney-client privilege." *Hayes v. SmithKlineBeecham Corp*., No. 07-CV-682-CVE-SAJ, 2008 WL 11381397, at \*3 (N.D. Okla. Dec. 19, 2008). In making this determination, the court may rely on the privilege log and affidavits submitted by the party claiming the privilege. *Davis,* 2012 WL 3922967, at \*4.

Marathon has submitted the Declaration of James Robert Bowden, Manager – Commercial Services, Natural Gas Marketing for Marathon. *See* [Doc. 120-2]. Mr. Bowden states that, in 2012, Karen Lukin, one of Marathon's former in-house counsel, requested that he compile information about certain of Marathon's gas-producing Oklahoma wells into a form spreadsheet. Marathon's legal department supplied the form spreadsheet, and the spreadsheets included the words "*Mittelstaedt* Review" in the title. [Doc. 120-2, ¶ 3]. Mr. Bowden states that he saved each "*Mittelstaedt* Review" spreadsheet in a folder on Marathon's computer system specifically designated for that purpose, as instructed, and to which only Marathon's Natural Gas and Legal

Departments had access.  He then input information taken from midstream gas contracts, plant statements, and flowback reports applicable to each well into the spreadsheets.  [*Id.* ¶ 4].  Mr. Bowden declares it was "[his] understanding Marathon's in-house legal department would then access those spreadsheets to use for legal analyses." [*Id.*].  Mr. Bowden also stated:  "To the best of my knowledge, the sole purpose of the *Mittelstaedt* Review spreadsheets was to compile information for legal analysis by Marathon's in-house legal department." [*Id.* ¶ 5].  Additionally, in its privilege log, Marathon identifies the documents as being "[p]repared at the direction of counsel for legal analysis." *See generally* [Doc. 110-3].  Based on this evidence, Marathon asserts it has satisfied its burden to demonstrate that the "*Mittelstaedt* Review" documents are privileged.

Under Oklahoma law, "[w]here a party objects to the introduction of evidence on the ground that it involves a privileged communication between attorney and client, the burden is upon the one making the objection to show the relationship of attorney and client *and other facts to bring the evidence within the terms of the statute pertaining to privileged communications*."  *Hurt v. Oklahoma*, 303 P.2d 476, 481 (Okla. Crim. App. 1956) (emphasis added).

Assuming that the "*Mittelstaedt* Reviews" qualify as "communications," the Bowden Declaration and privilege log offer no **facts** upon which the court can conclude that the "*Mittelstaedt* Reviews" were made for the purpose of providing legal advice or services, rather than for any other business purpose.  It is well-established that "[m]erely providing a business document to an attorney does not impart privileged status to that document."  *Hayes,* 2008 WL 11381397, at *3 (citing *Simon v. G.D. Searle & Co*., 816 F.2d 397, 403 (8th Cir. 1987)).  Further, although Mr. Bowden states it was "[his] understanding" that Marathon's in-house counsel used the spreadsheets for legal analysis and "the sole purpose of the *Mittelstaedt* Review spreadsheets was to compile information for legal analysis," these conclusory assertions of a legal purpose are

insufficient.  *See United States v. Johnston,* 146 F.3d 785, 794 (10th Cir. 1998) (noting lack of "credible evidence" that demonstrated communication related to provision of legal advice or strategy); *Ponca Tribe of Indians of Okla. v. Continental Carbon Co.,* No. CIV-05-445-C, 2008 WL 4372802, at *3 (W.D. Okla. Sept. 18, 2008) (noting lack of evidence of specific requests for legal advice); *Matlock v. Texas Life Ins. Co*., No. CIV-05-612-C, 2006 WL 8436594, at *2 (W.D. Okla. Jan. 24, 2006) ("While Defendant asserts the attorney's participation was to provide legal advice, it has refused to produce any additional information by which that conclusory assertion can be challenged by Plaintiff or measured by the Court."); *Cf. Motley,* 71 F.3d at 1550-51 (noting that memorandum at issue contained legal advice as to specific topic of corporate restructring, that no business advice was offered, and that no evidence was offered to directly contradict the statements).  As recognized by Magistrate Judge Jayne, Marathon offers no affidavits or evidence of what legal analysis took place or what the purpose of the analysis would be.  [Doc. 123, p. 28]. Thus, Marathon fails to offer facts or evidence to satisfy its burden to demonstrate the *"Mittelstaedt* Review" documents fall within the scope of Oklahoma's statutory attorney-client privilege.

Regardless of whether the Magistrate Judge relied on a presumption not recognized by Oklahoma law, it is clear to this court that Marathon failed to satisfy its burden to establish the privileged nature of the "*Mittelstaedt* Review" documents.  For this reason, based on the court's independent review, the "*Mittelstaedt* Reviews" are not privileged, and must be produced.

B.    *Hill Settlement Agreement*

Marathon also asserts that the Magistrate Judge erred in the analysis of Paragraph 2.8(B) of the *Hill* settlement agreement.  Paragraph 2.8(B) of that Settlement Agreement states as follows:

(B)    **Certain Other Types of Costs Relating to New Wells**:  Beginning on January 1, 2012, and for a period of ten (10) years from and after that date (subject to the provision below), Marathon will do the following with regard to new Marathon-operated wells in Oklahoma that are completed after January 1, 2012:

To the extent Marathon determines that royalty payments on Marathon's share of production will reflect deductions, whether monetarily or volumetrically, for costs of gathering, transportation and/or compression that occurs prior to any "processing" of the gas to extract natural gas liquids ("NGLS") from the gas stream, then:

> (i)     one or more Marathon personnel shall have first made an assessment of the circumstances of the well in question and its production and marketing terms, as well as the provisions of the applicable oil and gas leases to the extent relied upon by Marathon in deciding to make such deductions; and

> (ii)    the facts considered by the Marathon personnel (i.e., there shall be no duty to provide legal analysis by attorneys) in determining that such deductions from royalty—for gathering, transportation and/or compression that occurs prior to any "processing" of the gas to extract NGLs from the gas stream—were appropriate shall be recorded in a form that can be reproduced in the future upon appropriate inquiry being made by the affected royalty owners or their legal counsel.

[Doc. 110-5, pp. 14-15].[1]  As previously stated, the Magistrate Judge found that the "*Mittelstaedt Reviews*" are factual documents that Marathon contractually agreed to produce to royalty owners in Paragraph 2.8(B)(ii).

Having independently interpreted the Settlement Agreement and conducted a *de novo* review of the Magistrate Judge's interpretation of it, the court concurs with Magistrate Judge Jayne's conclusions.  *In re Grand Jury Subpoenas*, 144 F.3d at 658.  As recognized by Magistrate Judge Jayne, the provision creates contractual obligations related to new Marathon-operated wells in Oklahoma for the ten-year period from January 1, 2012 to January 1, 2022.  If Marathon determines that royalty payments on Marathon's share of production will reflect deductions for the cost of gathering, transportation and/or compression that occurs prior to any "processing" of the

---

[1] Insofar as Marathon contends that the obligations imposed by the *Hill* Settlement Agreement are not properly before the court, Marathon did not raise the argument before the Magistrate Judge and therefore the argument is waived.  *Amaya v. Bregman*, No. 14-CV-0599-WJ-SMV, 2016 WL 10516169, at *2 (D.N.M. Mar. 7, 2016) ("[T]heories or arguments raised for the first time in objections to a magistrate judge's order are deemed waived.").

gas to extract natural gas liquids from the gas stream, two things must occur.  *First*, Marathon personnel must make "an assessment" of the circumstances of the well and its production and marketing terms, as well as the applicable oil and gas leases to the extent relied on by Marathon in deciding to make the deductions.  *Second,* the facts considered by the Marathon personnel in determining the deductions were appropriate shall be recorded "in a form that can be reproduced in the future upon appropriate inquiry being made by the affected royalty owners or their legal counsel."  However, "there shall be no duty to provide legal analysis by attorneys."  [Doc. 123, pp. 29-30; Doc. 110-5, pp. 14-15].

Applying the clear language of the Settlement Agreement to the facts, no clear error exists. As previously stated, Mr. Bowden asserted that, beginning in 2012 and at the request of Marathon's former in-house counsel, he input information taken from midstream gas contracts, plant statements, and flowback reports onto the "*Mittelstaedt* Review" forms.  Thus, the evidence indicates that Mr. Bowden input factual information into a form.  Although Mr. Bowden states that, to the best of his knowledge, the purpose of the "*Mittelstaedt* Review" forms was to "compile information for legal analysis by Marathon's in-house legal department," as discussed above, Marathon offers only conclusory assertions in this regard.

Moreover, it is clear from the evidence that the "*Mittelstaedt* Review" forms themselves do not qualify as "legal analysis by attorneys."  First, there is no evidence that Mr. Bowden is an attorney.  Further, Mr. Bowden indicates that Marathon's in-house legal department the spreadsheets for *subsequent* legal analysis.

The *Hill* Settlement Agreement required Marathon to record the facts considered in determining deductions from royalties into a form that could be reproduced in the future upon appropriate inquiry by affected royalty owners.  The court finds no error in the Magistrate Judge's

conclusion that "the dots connect themselves" and the "*Mittelstaedt* Reviews" are therefore the non-privileged documents created to comply with *Hill* Settlement Agreement to be produced upon request. *Cf. Ocelot Oil Corp.*, 847 F.2d at 1464 ("The clearly erroneous standard applies to factual findings . . .  and requires the district court to affirm unless it is left with the 'definite and firm conviction that a mistake has been committed.'").  For this additional reason, the "*Mittelstaedt* Review" documents must be produced.

<h3 style="text-align:center">IV.     Conclusion</h3>

WHEREFORE, defendant Marathon Oil Company's Objection to Magistrate Judge's Order [Doc. 126] is overruled and Marathon's request that this court overturn the Magistrate Judge's ruling on the Second Motion to Compel as to the "*Mittelstaedt* Reviews" is denied.

IT IS SO ORDERED this 14th day of January, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE